## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, and AUSAR T. MOORE,<br><br>       Plaintiffs,<br><br>v.<br><br>FORMER SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, FORMER OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official capacity, OFFICER CHRIS N. PADGETT, in his individual and official capacity, OFFICER TYLER LANDREVILLE, in his individual and official capacity, OFFICER MARTIN D. HIGHSMITH, in his individual and official capacity, and SUPERVISOR DAVID P. JADLOCKI, in his individual and official capacity,<br><br>       Defendants. | Case No.: |

## **COMPLAINT**

NOW COME the Plaintiffs, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, and AUSAR T. MOORE, by and through their attorneys, O'CONNOR

LAW FIRM, LTD. and GALNOR SHUMARD, P.A., and for their Complaint against the Defendants, FORMER SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, FORMER OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official capacity, OFFICER CHRIS N. PADGETT, in his individual and official capacity, OFFICER TYLER LANDREVILLE, in his individual and official capacity, OFFICER MARTIN D. HIGHSMITH, in his individual and official capacity, and SUPERVISOR DAVID P. JADLOCKI, in his individual and official capacity, allege as follows:

<u>**JURISDICTION**</u>

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the Defendants' tortious conduct and their deprivation of Plaintiffs' rights secured by the U.S. Constitution.

2. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). Defendants reside in this judicial district, and the events and omissions giving rise to Plaintiffs' claims

occurred within this judicial district.

## PARTIES

4. Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS (hereinafter "BRITTANY MOORE"), is a resident of the City of Jacksonville, County of Duval, State of Florida.

5. Plaintiff, AUSAR T. MOORE, is a resident of the City of Jacksonville, County of Duval, State of Florida.

6. Defendant, FORMER SHERIFF MIKE WILLIAMS, serves in his official capacity as Sheriff at Jacksonville Sheriff's Office (hereinafter "JSO") for the Consolidated City of Jacksonville, Florida.  FORMER SHERIFF MIKE WILLIAMS is sued herein in his official capacity as Sheriff of JSO.  JSO is a department of the Consolidated City of Jacksonville, Florida, responsible for fulfilling its policing functions, that is or was the employer of the individual Sheriff's officers named as Defendants herein.  At all times relevant, the aforementioned Sheriff's officers acted as fully authorized agents of JSO. Furthermore, Defendant, FORMER SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida (hereinafter "SHERIFF

WILLIAMS"), is a necessary party and is ultimately responsible for judgment.

7. At all times relevant, FORMER OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official capacity (hereinafter "OFFICER CARMONA-FONSECA"), was an employee and/or duly authorized agent of JSO and was acting in the course and scope of his employment.

8. At all times relevant, OFFICER CARMONA-FONSECA was acting under the color of state law, ordinance, and/or regulation, statutes, custom, and usages of JSO. OFFICER CARMONA-FONSECA is being sued in his individual and official capacity.

9. At all times relevant, OFFICER CHRIS N. PADGETT, in his individual and official capacity (hereinafter "OFFICER PADGETT"), was an employee and/or duly authorized agent of JSO and was acting in the course and scope of his employment.

10. At all times relevant, OFFICER PADGETT was acting under the color of state law, ordinance, and/or regulation, statutes, custom, and usages of JSO. OFFICER PADGETT is being sued in his individual and official capacity.

11. At all times relevant, OFFICER TYLER LANDREVILLE, in his individual

and official capacity (hereinafter "OFFICER LANDREVILLE"), was an employee and/or duly authorized agent of JSO and was acting in the course and scope of his employment.

12. At all times relevant, OFFICER LANDREVILLE was acting under the color of state law, ordinance, and/or regulation, statutes, custom, and usages of JSO. OFFICER LANDREVILLE is being sued in his individual and official capacity.

13. At all times relevant, OFFICER MARTIN D. HIGHSMITH, in his individual and official capacity (hereinafter "OFFICER HIGHSMITH"), was an employee and/or duly authorized agent of JSO and was acting in the course and scope of his employment.

14. At all times relevant, OFFICER HIGHSMITH was acting under the color of state law, ordinance, and/or regulation, statutes, custom, and usages of JSO. OFFICER HIGHSMITH is being sued in his individual and official capacity.

15. At all times relevant, SUPERVISOR DAVID P. JADLOCKI, in his individual and official capacity (hereinafter "SUPERVISOR JADLOCKI"), was an employee and/or duly authorized agent of JSO and was acting in the course and scope of his employment.

16. At all times relevant, SUPERVISOR JADLOCKI was acting under the color of state law, ordinance, and/or regulation, statutes, custom, and usages of JSO.  SUPERVISOR JADLOCKI is being sued in his individual and official capacity.

## GENERAL ALLEGATIONS

17. On May 13, 2020, OFFICER CARMONA-FONSECA parked in the private driveway of the property owned by BRITTANY MOORE, located at 237 E. 21st Street, Jacksonville, Florida 32206, to allegedly "read emails."

18. Upon information and belief, OFFICER CARMONA-FONSECA, a now convicted criminal stemming from sexual crimes involving minors, was actually viewing inappropriate and illegal materials while parked in BRITTANY MOORE's driveway.

19. BRITTANY MOORE caught OFFICER CARMONA-FONSECA doing said inappropriate and illegal acts, which was, in part, the reason he reacted the way he did and how the ensuing events unfolded.

20. Well within her rights to question why any individual had parked on her private property, BRITTANY MOORE stepped outside and asked OFFICER CARMONA-FONSECA why he was parked in her driveway.

21. Upon indicating that he was "reading emails" and would leave shortly, BRITTANY MOORE asked him to leave immediately.

22. OFFICER CARMONA-FONSECA intentionally did not turn on his body worn camera (hereinafter "BWC"), in violation of JSO policy on BWCs.

23. OFFICER CARMONA-FONSECA falsely accused BRITTANY MOORE of throwing a plastic spoon with an unknown substance through his open car window and that the spoon and substance landed on his arm.

24. Due to his aforementioned failure to activate his BWC, for which he subsequently received an in-house complaint that was sustained, there is no evidence to support his claim.

25. BRITTANY MOORE had actually asked him to remove himself from her property and OFFICER CARMONA-FONSECA began yelling at her.

26. In fear for her life due to his overreaction and strained relationships between law enforcement and black individuals in Jacksonville, BRITTANY MOORE called 911.

27. During that 911 call, BRITTANY MOORE clearly expressed to the dispatcher that she was uncomfortable and felt threatened, and mentioned the firearm that she legally owned.

28. Later on during the 911 phone call, after BRITTANY MOORE had placed her gun on a table or the floor of her home, she agreed to put it away when the 911 dispatcher subsequently asked her to do so.

29. At no point during the 911 call did BRITTANY MOORE threaten nor state that she would "shoot the police," as claimed by the 911 dispatcher and responding officers who were called to the scene.

30. It should be further noted that BRITTANY MOORE was legally permitted to own the gun pursuant to Florida firearms laws in 2020, particularly in defense of self, family, and home, which is later confirmed by responding officers called to the scene.

31. Furthermore, JSO's Risk Protection Unit Investigation Report (hereinafter "RPUIR") found that officers were not threatened by BRITTANY MOORE.

32. OFFICER PADGETT and OFFICER LANDREVILLE then responded to the scene.

33. BRITTANY MOORE again requested that OFFICER CARMONA-FONSECA leave her property by means of asking the newly arrived officers, however, one of them replied that he would not be telling another officer to do anything.

34. After a brief confrontation, OFFICER PADGETT suddenly moved towards BRITTANY MOORE at a high rate of speed.

35. At no point did he indicate that she was being detained and/or arrested, therefore, BRITTANY MOORE attempted to retreat back into her house, not understanding what was happening.

36. OFFICER PADGETT followed her into the house without a warrant and began attacking her.

37. Initially, he seemingly attempted to disrobe her by pulling her shirt and exposing her breasts a couple times.

38. OFFICER PADGETT then threw BRITTANY MOORE to the ground and began slamming her head into it while she screamed for help, as did her husband.

39. OFFICER LANDREVILLE then came to assist OFFICER PADGETT in the attack by pinning BRITTANY MOORE down by kneeling on her neck while OFFICER PADGETT twisted BRITTANY MOORE's left arm behind her back.

40. Upon placing her into custody, OFFICER PADGETT walked BRITTANY MOORE to his police car while mocking her that she was now going to jail

for battery on a law enforcement officer (hereinafter "LEO").

41. While being walked to the squad car, BRITTANY MOORE's front teeth were visibly no longer intact.

42. The responding officers attempted to claim that BRITTANY MOORE chipped her own teeth by slamming her head on her front door when attempting to "run away" from OFFICER PADGETT.

43. At no point did BRITTANY MOORE's face make any contact with her front door.

44. Clearly, BRITTANY MOORE's teeth chipped when OFFICER PADGETT repeatedly slammed her face into the ground.

45. OFFICER PADGETT also claimed that BRITTANY MOORE kicked him while placing her into custody, however, this was a false accusation.

46. The fabricated evidence by both OFFICER CARMONA-FONSECA's claim about the spoon and OFFICER PADGETT's claim about BRITTANY MOORE kicking him resulted in her malicious prosecution.  A jury subsequently found BRITTANY MOORE not guilty on the charges of battery on a LEO.

47. After twisting her left arm once more, BRITTANY MOORE was placed in

the back of one of the squad cars by OFFICER PADGETT.

48. She requested medical attention for her injuries, however, responding EMTs declined to give her any medical attention or transport her to a hospital due to influence by said officers.

49. At some point, OFFICER PADGETT entered BRITTANY MOORE's home without a warrant once again and picked up her gun off the floor, which happened to be laying next to her teeth that he just broke/knocked out.

50. At one point, OFFICER LANDREVILLE also entered her home without a warrant.

51. Under the guise of helping BRITTANY MOORE's husband locate her wallet that contained her identification card, OFFICER LANDREVILLE opened a bedroom closet door, also without a warrant.

52. The actions of OFFICER PADGETT and OFFICER LANDREVILLE entering BRITTANY MOORE's home without a warrant amount to nothing more than unreasonable search and seizure.

53. This is later confirmed by OFFICER HIGHSMITH, as he advised BRITTANY MOORE while transporting her to the jail that "we can't just go into your home.  We can't go into your home without a warrant."

54. By that point, SUPERVISOR JADLOCKI had arrived on scene.

55. It should be noted that OFFICER CARMONA-FONSECA had several other options when parking his car to "read emails."

56. These options included a public gas station, a public convenience store, and a public parking lot that JSO officers frequently park in while on patrol.

57. All of these options were within several hundred feet or less of BRITTANY MOORE's driveway.

58. SUPERVISOR JADLOCKI even asked OFFICER CARMONA-FONSECA why he parked in BRITTANY MOORE's driveway.

59. Despite seemingly agreeing that OFFICER CARMONA-FONSECA's presence was questionable in the first place, SUPERVISOR JADLOCKI then proceeded to violate JSO policies by asking wholly inappropriate, vulgar, and sexual questions about BRITTANY MOORE.

60. Ironically, particularly given OFFICER CARMONA-FONSECA's subsequent criminal charges, SUPERVISOR JADLOCKI asked him whether he was there to have sex with BRITTANY MOORE and made a vulgar comment about her genitals and race.

61. SUPERVISOR JADLOCKI, who knew or reasonably should have known

about OFFICER CARMONA-FONSECA's sustained citizen complaint for violating BWC policy just weeks prior to this incident, then went on to coach OFFICER CARMONA-FONSECA on what to put in his report as to why he neglected to activate his BWC during this incident.

62. Seemingly attempting to break as many JSO policies as he could, SUPERVISOR JADLOCKI then engaged in a conversation with BRITTANY MOORE's aunt regarding why black individuals fear police officers and declared that they just want to stir the issue on TV.

63. Taking a page out of SUPERVISOR JADLOCKI's playbook, OFFICER PADGETT also violated JSO policies by engaging in controversies with BRITTANY MOORE's family members.

64. He told BRITTANY MOORE's aunt that BRITTANY MOORE would be dead had she touched her gun, he told her husband about purported FBI statistics as to police-involved shootings/killings when AUSAR T. MOORE also explained why black individuals are afraid of police, and told BRITTANY MOORE's mother that "we're not going to play the race card over the phone there sweetheart."

65. He decided to take it one step further by telling BRITTANY MOORE's

neighbor that she was "unstable."

66. OFFICER LANDREVILLE also deemed it appropriate to call BRITTANY MOORE "crazy" when speaking with her sister.

67. Speaking disparagingly about an individual's gender, race, and/or disability is in direct violation of JSO's Code of Conduct policy.

68. Furthermore, not only was it inappropriate to paint BRITTANY MOORE as "unstable" or "crazy," it was also completely false, as the RPUIR clearly indicated she had no documented history of mental illness.

69. Rather than transporting BRITTANY MOORE directly to the pretrial detention facility/jail, the officers transported her to the aforementioned public parking lot after sundown.

70. There, she was moved from one squad car to OFFICER HIGHSMITH's vehicle.

71. He then transported her for booking.

72. Following her release from jail, BRITTANY MOORE had to seek medical treatment for the injuries she sustained as a result of being attacked by OFFICER PADGETT.

73. Her front teeth were broken, she sustained severe damage to her left arm

resulting in complex regional pain syndrome, and developed post-traumatic stress disorder as a result of the incident.

74. She continues to suffer from both the physical and mental effects of that day.

75. OFFICER CARMONA-FONSECA could have parked anywhere else on public property rather than in BRITTANY MOORE's driveway.

76. He could have moved his car to one of those public properties when BRITTANY MOORE asked him to remove himself from her property.

77. He could have activated his BWC not only for his own safety, but BRITTANY MOORE's and the general public's safety.

78. BRITTANY MOORE did the right thing by calling 911 herself but instead, she was punished.

79. As a result of OFFICER CARMONA-FONSECA, OFFICER PADGETT, OFFICER LANDREVILLE, OFFICER HIGHSMITH, and SUPERVISOR JADLOCKI's actions, BRITTANY MOORE has been permanently injured.

80. AUSAR T. MOORE has also faced emotional trauma as a result of the incident.

81. The mental and physical effects of the incident have placed a strain on AUSAR T. MOORE and BRITTANY MOORE's relationship.

82. They regularly attended therapy sessions together in an attempt to work on the issues they have experienced stemming from BRITTANY MOORE's attack.

83. Therefore, AUSAR T. MOORE has a consortium claim in this matter.

84. Subsequent to this incident that occurred on or about May 13, 2020, an Internal Affairs (hereinafter "IA") investigation was performed by JSO.

85. After hearing about the incident on the news a couple days later, a retired JSO police lieutenant called who is believed to be Defendant, OFFICER PADGETT, to inquire whether he had completed a Response to Resistance Report (hereinafter "RTR Report"). He informed her that he had not.

86. Upon reporting this to a JSO Assistant Chief, the lieutenant called who is believed to be Defendant, OFFICER PADGETT, again to inquire why he had not completed an RTR Report. He informed he neglected to do so because he did not observe any injuries to Plaintiff, BRITTANY MOORE's, mouth.

87. The lieutenant then informed who is believed to be Defendant, OFFICER PADGETT, that even though he did not observe an injury to Plaintiff, BRITTANY MOORE's, mouth, he was required to complete an RTR Report because she had complained of an injury.

88. Thereafter, the lieutenant called Defendant, OFFICER LANDREVILLE, to inquire whether he had completed an RTR Report. He informed her that he had not.

89. The lieutenant then advised Defendant, OFFICER LANDREVILLE, and who is believed to be Defendant, OFFICER PADGETT, not to complete an RTR Report because "it will look bad" being completed "three (3) days later."

90. Defendant, SUPERVISOR JADLOCKI, was also interviewed in relation to the IA investigation.

91. When questioned why he had not asked detailed questions concerning the aforementioned incident, Defendant, SUPERVISOR JADLOCKI, blamed it on his "inexperience" as a police supervisor.

92. When discussing Plaintiff, BRITTANY MOORE's, complaints concerning her injuries sustained in the aforementioned incident, Defendant, SUPERVISOR JADLOCKI, stated that he believed she was stalling in an effort to delay being transported to the Pretrial Detention Facility but also that an RTR Report should have been completed.

93. Defendant, SUPERVISOR JADLOCKI, admitted that he wished he had

"done things better" so that the necessary reports would have been completed.

94. As part of their IA investigation, upon information and belief, Defendant, OFFICER PADGETT, was also interviewed. He was questioned about the information he provided to Defendant, OFFICER HIGHSMITH, in a written statement.

95. Defendant, OFFICER PADGETT, stated that he failed to mention Plaintiff, BRITTANY MOORE's, complaints of "mouth pain" and "deep vein thrombosis," or even the fact he observed chipped teeth, in his written statement because he did not believe it was "relevant" to the criminal charges at the time, as he also believed her complaints were a "stall tactic."

96. Defendant, OFFICER PADGETT, admitted that he should have informed Defendant, OFFICER HIGHSMITH, as to what had occurred and the injuries Plaintiff, BRITTANY MOORE, complained of, as Defendant, OFFICER HIGHSMITH, had not been present to witness it and therefore, he should have requested that Defendant, OFFICER HIGHSMITH, "investigate this further."

97. The IA investigation determined that there were no reports completed by

the responding JSO officers documenting Plaintiff, BRITTANY MOORE's,

injuries.

98. The IA investigation concluded that Defendant, OFFICER CARMONA-

FONSECA, violated JSO's policies on BWCs for his failure to timely activate

during this incident, in addition to repeated infractions of said policy.

99. The IA investigation found that who is believed to be Defendant, OFFICER

PADGETT, allowed Plaintiff, BRITTANY MOORE, to hit the front of her

head on the frame of his police vehicle when placing her into it, and that it

was his responsibility to maintain control of her while she was in physical

restraints and in his custody.

100.    The IA investigation also found that Defendant, OFFICER

LANDREVILLE, and who is believed to be Defendant, OFFICER

PADGETT, both acknowledged they used physical force to take Plaintiff,

BRITTANY MOORE, into custody, that she complained of mouth pain after

being placed in a police vehicle, and that they were both well aware of her

injury complaints and even observed her chipped front teeth. The fact that

they used force to apprehend Plaintiff, BRITTANY MOORE, and the fact

that she complained of an injury, required both of them to complete an RTR

Report, however, they did not do so.

101.    Furthermore, the IA investigation determined that who is believed to be Defendant, OFFICER PADGETT, failed to obtain more details on the nature and cause of Plaintiff, BRITTANY MOORE's, injuries and that he should have notified Defendant, OFFICER HIGHSMITH, of her injury claims and requested he "investigate this further."

102.    The IA investigation also found that Defendant, SUPERVISOR JADLOCKI, failed to ask for more details surrounding the incident and that despite being aware of Plaintiff, BRITTANY MOORE's, complaints of "mouth pain," that complaint and her complaint of "blood clots" did not seem like a "genuine concern" to him.

103.    Finally, the IA investigation determined that Defendant, SUPERVISOR JADLOCKI, made no effort to ensure an RTR Report was completed which was his responsibility as the responding police supervisor, that he admitted he did not ensure "everything" that should have been done on the call for service was done, and that his claimed "inexperience" as a police supervisor did not preclude him from making sound decisions and following JSO policy.

104.     Upon information and belief, prior to and including 2020, Defendant, SHERIFF WILLIAMS, was aware of JSO officers invading the privacy and personal property of innocent civilians without legal cause, failing to activate their BWC, battering innocent civilians, performing unlawful searches and seizures without warrants, and making vulgar, disparaging, racist, and sexist comments about arrestees and other civilians, however, Defendant, SHERIFF WILLIAMS, took no steps to curb such abuses of power and use of force.

105.     The Defendant's, OFFICER CARMONA-FONSECA, in his official capacity as agent and/or employee of JSO, unlawful invasion of privacy and personal property on May 13, 2020, in addition to his failure to activate his BWC, was not isolated, but part of a longstanding practice of tolerating the infringement of constitutional rights of African American and female individuals who are lawfully on their own property, as well as the violations of JSO's own policies and procedures on BWCs.

106.     The Defendants', OFFICER PADGETT and OFFICER LANDREVILLE, in their official capacity as agents and/or employees of JSO, use of force on May 13, 2020, was not isolated, but part of a longstanding

practice by JSO of tolerating the use of force against innocent African American and female civilians.

107.    The Defendants', OFFICER PADGETT, OFFICER LANDREVILLE, and OFFICER HIGHSMITH, in their official capacity as agents and/or employees of JSO, unlawful searches and seizure without a search warrant on May 13, 2020, were not isolated, but part of a longstanding practice by JSO of tolerating the unlawful searches and seizures against innocent African American and female civilians.

108.    Furthermore, the Defendants', OFFICER PADGETT, OFFICER LANDREVILLE, and SUPERVISOR JADLOCKI, in their official capacity as agents and/or employees of JSO, vulgar, disparaging, racist, and sexist comments, including comments concerning individuals with disabilities, on May 13, 2020, were not isolated, but part of a longstanding practice by JSO of tolerating the inappropriate, inaccurate, and prejudicial comments against arrestees and other innocent African American and female civilians, also in violation of JSO's own policies and procedures on Code of Conduct.

109.    In December 2004, a member of JSO slammed Sammy Lee Evans, an African American male, to the ground.  As a result, Mr. Evans' head hit the

ground with such force that it resulted in Mr. Evans' death. Mr. Evans was not resisting the arrest, which was for an open container of alcohol.

110.    In January 2006, a member of JSO kneed Ronal Ferrera, in the face three times while Mr. Ferrera was handcuffed.

111.    In May 2010, a member of JSO fractured multiple bones in David Kemp, an African American male's, face by violently striking him as he laid on the ground, in compliance with the officer's commands to do so. See *Kemp v. Rutherford, et al.*, Case No.: 3:10-cv-HES-JRK (M.D. Fla. Jacksonville Division). Sheriff Rutherford had actual notice of Mr. Kemp's encounter with JSO because of the federal lawsuit filed against him, yet Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and the officer involved and failed to discipline said officer.

112.    In March 2012, members of JSO questioned Kyle Fowler, concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members to due the behavior of the officers and told them he was not interested in speaking with them anymore, and began to walk towards his

gate.  As he did so, the JSO members knocked Mr. Fowler through a closed metal gate and onto the ground.  The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him, injuring Mr. Fowler in the process of effectuating his false arrest.  The charge on which Mr. Fowler was falsely arrested, resisting an officer without violence, was ultimately dismissed. The JSO members involved were not discipled nor reprimanded for their actions against Mr. Fowler.

113.    In June 2013, a member of JSO violently slammed Robert Slade, to the ground, causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident.  As Mr. Slade was merely asking the officer when his insurance information would be taken following the accident, he was forcefully thrown to the ground.  Mr. Slade was falsely arrested for resisting an officer without violence in violation of § 843.02, Fla. Stat. (2012).  The charges against Mr. Slade were dismissed.  The JSO member involved was not disciplined nor reprimanded for his actions against Mr. Slade.

114.    On November 12, 2014, at the Pretrial Detention Facility, a member of

JSO violently slammed Deandre Ezell's head into a concrete wall while Mr. Ezell, an African American juvenile male, was handcuffed. The use of force knocked Mr. Ezell unconscious and resulted in his hospitalization. At the time of the incident, Mr. Ezell was a minor.

115.    In July 2015, members of JSO punched Kelli Wilson, an African American female, in the face after she refused their unlawful commands to hand over her cell phone she was using to record public police activity. JSO officers proceeded to violently take Ms. Wilson to the ground, pulling her hair and attempting to rip her arms out from under her. Ms. Wilson was arrested for resisting an officer without violence. The charges against Ms. Wilson were dismissed. The JSO members involved were not disciplined nor reprimanded for their actions against Ms. Wilson.

116.    In April 2016, members of JSO violently took down John Blessing, while effectuating his arrest. The force caused Mr. Blessing to lose 75% of the function in his arm. The charges on which Mr. Blessing was arrested – resisting without violence, disorderly intoxication, and battery, were ultimately dropped after the Court found the JSO officer did not investigate the alleged crime nor established probable cause.

117. On April 27, 2016, Mayra Martinez, a female, was at her place of employment, Scores, when JSO officers arrived after calls about her intoxication. JSO officers slammed Ms. Martinez into the pavement and punched her numerous times. Upon arrival at the Pretrial Detention Facility, JSO officers hit Ms. Martinez with a closed fist in her stomach, chest, and face, knocking her unconscious. Ms. Martinez remained handcuffed during the encounter.

118. On May 22, 2016, Vernell Bing, Jr., an African American male, was shot in the head and killed by one of the Defendants in this case, OFFICER LANDREVILLE, as he walked away from him. The incident prompted numerous protests in response to his death. See *Bing v. Landreville, et al.,* Case No.: 3:16-cv-01140-MMH-JK (M.D. Fla. Jacksonville Division). Sheriff Williams had actual notice of Mr. Bing's encounter with JSO and OFFICER LANDREVILLE because of the federal lawsuit filed against him.

119. In June 2017, members of JSO struck Elias Campos, a 17-year-old minor, multiple times in the fact while he was handcuffed inside a patrol car. The minor child required medical attention at the scene.

120. On June 23, 2017, Jonathan Williams, an African American male, was

pulled over by JSO officers, who placed one handcuff on Mr. Williams before punching him twice in the face, despite the fact that he was not resisting. The JSO officer proceeded to throw Mr. Williams to the ground, punching him in the back and kneeing him in the head. As a result, Mr. Williams suffered fractures in the right orbital wall, left inferior, and medial orbital wall of his skull, as well as soft tissue swelling and hematoma in the back of his head. The officers involved in the use of force were not disciplined nor reprimanded.

121.    On July 10, 2018, JSO officers were called to the scene for an argument involving Marvin Johnson, an African American male. After surrendering himself to JSO officers and complying with their commands, a member of JSO kicked Mr. Johnson in the left temple while he laid face down on the ground with his hands behind his back. The same JSO officer kneed Mr. Johnson in the back of the head, causing Mr. Johnson's chin to bounce off the concrete. Despite staying still and not reacting to the attack, JSO officers commanded one of their K-9 dogs to attack Mr. Johnson, and he was bit several times in the left arm. Mr. Johnson suffered an injury to his brachial artery, requiring emergency trauma surgery, including an interposition

basilica vein graft, thrombectomy of the axillary and brachial artery, and skin grafting. He lost substantial use of his left arm and experienced consistent arm pain and numbness in his fingers. See *Johnson v. Williams, et al.*, Case No.: 3:21-cv-00622-TJC-JBT (M.D. Fla. Jacksonville Division). Sheriff Williams had actual notice of Mr. Johnson's encounter with JSO because of the federal lawsuit filed against him.

122.    On March 11, 2021, JSO officers were called to investigate a robbery at a motel. After receiving little to no evidence that Maurice V. Whigham, an African American male and a paying customer of said motel, was responsible for said robbery, JSO officers presented to the motel to arrest Mr. Whigham. Despite surrendering to and complying with JSO officers' commands, a Sheriff's K-9 was repeatedly released on Mr. Whigham while he was handcuffed on the ground. The K-9's bites resulted in bite and deep scratches to numerous areas of Mr. Whigham's body. The bite to his left foot was so severe that it fractures the bones and left him with permanent disfigurements and disability. While in JSO custody, JSO officers performed an illegal search and seizure of Mr. Whigham's motel room without a search warrant. All charges against Mr. Whigham stemming from this incident

were subsequently dropped, and the JSO officers were never disciplined for their actions. See *Whigham v. Williams, et al.*, Case No.: 3:23-cv-00012-HES-PDB (M.D. Fla. Jacksonville Division). Sheriff Williams had actual notice of Mr. Whigham's encounter with JSO because of the federal lawsuit filed against him.

<u>**COUNT I**</u>
**42 U.S.C. § 1983 – Due Process v. Former Officer Alejandro Carmona-Fonseca**

123.     Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 123 of this Count I, as though fully stated herein.

124.     As described in detail above, Defendant, OFFICER CARMONA-FONSECA, while acting within the scope of his employment and under the color of law and authority as an officer, individually and/or jointly deprived Plaintiff, BRITTANY MOORE, of her constitutional rights.

125.     Defendant, OFFICER CARMONA-FONSECA, while acting individually, jointly, and under the color of law and within the scope of his employment, negligently and unlawfully placed himself on the property of Plaintiff, BRITTANY MOORE, and refused to remove himself and his vehicle from the premises when she asked him to do so. He then

subsequently pursued the arrest of Plaintiff when he knew or reasonably should have known that the evidence he relayed to dispatch was fabricated, inaccurate, and/or insufficient, in violation of the Fourteenth Amendment of the U.S. Constitution.

126. Defendant, OFFICER CARMONA-FONSECA's, misconduct directly resulted in the unjust subsequent actions of his individual officer Co-Defendants, thereby denying Plaintiff, BRITTANY MOORE, her constitutional right.

127. The conduct described in this Count was objectively unreasonable and was undertaken intentionally and maliciously, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff, BRITTANY MOORE's, constitutionally protected rights.

128. In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER CARMONA-FONSECA, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently. Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time. During this period, Plaintiff suffered or will suffer great pain and was

hindered and prevented from attending to her business and affairs. Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT II
**42 U.S.C. § 1983 – State-Created Danger Violation of 14th Amendment Substantive Due Process v. Former Officer Alejandro Carmona-Fonseca**

129.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 129 of this Count II, as though fully stated herein.

130.    In the manner more fully described above, before and during the commission of the constitutional violations described herein, Defendant,

OFFICER CARMONA-FONSECA, used his authority as an Officer and an

employee, agent, and/or representative of Defendant, SHERIFF WILLIAMS,

to create an environment that endangered both Plaintiff, BRITTANY

MOORE's, physical safety and mental/emotional health, in one or more of

the following ways:

a. Provided fabricated and/or inaccurate information to dispatchers concerning an alleged battery against him by Plaintiff, BRITTANY MOORE, without sufficient evidence;

b. Failed to timely activate his BWC in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to activate their BWCs upon arriving at the scene of police activity and that every reasonable attempt should be made to activate the BWC prior to engaging in police activity; and/or

c. Consistently violated SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures concerning BWCs, including prior to, at the time of, and subsequent to this incident.

131.    The misconduct described in this Count was committed with the

conscious and intentional disregard of and indifference to the rights and

safety of the Plaintiff, BRITTANY MOORE, and Defendant, OFFICER

CARMONA-FONSECA, knew or reasonably should have known said

misconduct would likely result in injury, damage, or other harm to Plaintiff,

BRITTANY MOORE, and that his misconduct created or substantially

contributed to the creation of the dangerous circumstances he placed Plaintiff, BRITTANY MOORE, into, as described above.

132.     In addition, as a direct and proximate result of Defendant, OFFICER CARMONA-FONSECA's, misconduct described in this Count, Plaintiff, BRITTANY MOORE, was deprived of the rights, privileges, and immunities secured to her by the Fourteenth Amendment to the U.S. Constitution and law enacted thereunder, and suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.  Plaintiff, BRITTANY MOORE, has or will become compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief

this Court deems equitable and just.

## COUNT III
### State Law Claim – Willful and Wanton Conduct v. Former Officer Alejandro Carmona-Fonseca

133.     Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1

through 122 of this Complaint, as and for paragraph 133 of this Count III, as

though fully stated herein.

134.     Defendant, OFFICER CARMONA-FONSECA, individually and as

agent, employee, and/or servant of JSO, had a duty to refrain from willful

and wanton conduct.

135.     At all times relevant, Plaintiff, BRITTANY MOORE, exercised

ordinary care for her own safety.

136.     On May 13, 2020, Defendant, OFFICER CARMONA-FONSECA,

acted with reckless disregard and/or willful and wanton conduct, and

showed an utter indifference as to the constitutional rights of the Plaintiff,

BRITTANY MOORE, when he negligently and unlawfully placed himself

on her property and refused to remove himself and his vehicle from the

premises when she asked him to do so, failed to activate his BWC, and

pursued her arrest when he knew or reasonably should have known that

the evidence he relayed to dispatch was fabricated, inaccurate, and/or insufficient.

137.    Defendant, OFFICER CARMONA-FONSECA's, misconduct directly resulted in the unjust subsequent actions of his individual officer Co-Defendants, thereby denying Plaintiff, BRITTANY MOORE, her constitutional right.

138.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER CARMONA-FONSECA, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently.  Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time.  During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and

GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER

OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official

capacity, in an amount to exceed the jurisdictional limits of this Court, and further

demands punitive damages, costs, and attorneys fees, and for any additional relief

this Court deems equitable and just.

**COUNT IV**
**42 U.S.C. § 1983 – Excessive Force v. Officer Chris N. Padgett**

139.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1

through 122 of this Complaint, as and for paragraph 139 of this Count IV, as

though fully stated herein.

140.    As described in detail above, Defendant, OFFICER PADGETT, while

acting within the scope of his employment and under the color of law and

authority as a responding officer, individually and/or jointly deprived

Plaintiff, BRITTANY MOORE, of her constitutional rights.

141.    Defendant, OFFICER PADGETT, while acting individually, jointly,

and under the color of law and within the scope of his employment,

repeatedly and severely battered Plaintiff, BRITTANY MOORE, while she

laid on the floor of her home, in violation of the Fourteenth Amendment of

the U.S. Constitution.

142.     Defendant, OFFICER PADGETT's, actions, while acting under the color of law, amounted to unnecessary and excessive force to the person of the Plaintiff, BRITTANY MOORE, when there were no reasonable grounds to do so.

143.     As described in detail above, Plaintiff, BRITTANY MOORE's, actions did not justify the use of unnecessary and excessive force by Defendant, OFFICER PADGETT.

144.     Defendant, OFFICER PADGETT, acted in concert with other officers to apply excessive force upon Plaintiff, BRITTANY MOORE.

145.     The conduct described in this Count was objectively unreasonable and was undertaken intentionally and maliciously, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff, BRITTANY MOORE's, constitutionally protected rights.

146.     In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER PADGETT, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently.  Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time.

During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs. Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER CHRIS N. PADGETT, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT V
**42 U.S.C. § 1983 – Unreasonable Search and Seizure v. Officer Chris N. Padgett**

147.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 147 of this Count V, as though fully stated herein.

148.    As described in detail above, Defendant, OFFICER PADGETT, while acting within the scope of his employment and under the color of law and

authority as a responding officer, individually and/or jointly deprived Plaintiff, BRITTANY MOORE, of her constitutional rights.

149.    Defendant, OFFICER PADGETT, while acting individually, jointly, and under the color of law and within the scope of his employment, followed Plaintiff, BRITTANY MOORE, into her home without a search warrant and attempted to disrobe her, in violation of the Fourth Amendment of the U.S. Constitution.

150.    Defendant, OFFICER PADGETT's, actions, while acting under the color of law, amounted to unreasonable search and seizure of the person and property of the Plaintiff, BRITTANY MOORE, when there were no reasonable grounds to do so.

151.    As described in detail above, Plaintiff, BRITTANY MOORE's, actions did not justify the unreasonable search and seizure by Defendant, OFFICER PADGETT.

152.    Defendant, OFFICER PADGETT, acted in concert with other officers to effectuate an unreasonable search and seizure upon Plaintiff, BRITTANY MOORE, and her property.

153.    The conduct described in this Count was objectively unreasonable

and was undertaken intentionally and maliciously, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff, BRITTANY MOORE's, constitutionally protected rights.

154.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER PADGETT, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently.  Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time. During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER CHRIS N. PADGETT, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive

damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT VI
### 42 U.S.C. § 1983 – State-Created Danger Violation of 14th Amendment Substantive Due Process v. Officer Chris N. Padgett

155.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 155 of this Count VI, as though fully stated herein.

156.    In the manner more fully described above, before and during the commission of the constitutional violations described herein, Defendant, OFFICER PADGETT, used his authority as an Officer and an employee, agent, and/or representative of Defendant, SHERIFF WILLIAMS, to create an environment that endangered both Plaintiff, BRITTANY MOORE's, physical safety and mental/emotional health, in one or more of the following ways:

   a. Violated SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures concerning Arrests, Code of Conduct, Physical Restraints, and Response to Resistance;

   b. Failed to secure an arrest warrant prior to entering Plaintiff, BRITTANY MOORE's, residence in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to have probable cause or obtain

an arrest warrant prior to arresting an individual;

c.  Failed to secure an arrest warrant prior to entering Plaintiff, BRITTANY MOORE's, residence and violently placing her into custody in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to obtain an arrest warrant for the arrest of a suspect in that suspect's place of residence;

d.  Failed to search Plaintiff, BRITTANY MOORE, prior to placing her in one of the JSO vehicles in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to search arrestees prior to placing them in any vehicle, holding room, or interview room;

e.  Assaulted and battered Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to use only the minimum force necessary to effect the arrest and to not inflict any mental or physical harm on any individual;

f.  Attempted to disrobe and exposed the breasts of Plaintiff, BRITTANY MOORE, in the doorway of her residence in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to search arrestees discreetly, using an officer of the same gender as the arrestee when one is available;

g.  Made offensive, inaccurate, prejudicial, and racially-charged comments to Plaintiff, BRITTANY MOORE's, husband/Plaintiff, AUSAR T. MOORE, and her other family members and neighbor in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to strive to treat victims, witnesses, suspects, arrested persons, and all other contact with appropriate respect and to suppress personal prejudices or attitudes, which may influence impartiality;

h.  Made offensive, inaccurate, prejudicial, and racially-charged comments to Plaintiff, BRITTANY MOORE's, husband/Plaintiff, AUSAR T. MOORE, and her other family members and neighbor in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to refrain from unbecoming conduct, including, but not limited to, speaking disparagingly about, defaming, or demeaning another member, or the gender, ethnic origin, religion, race, disability, or sexual orientation of any person or group;

i.  Made offensive, inaccurate, prejudicial, and racially-charged comments to Plaintiff, BRITTANY MOORE's, husband/Plaintiff, AUSAR T. MOORE, and her other family members and neighbor in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to refrain from unbecoming conduct, including, but not limited to, engaging in controversies and displaying partiality;

j.  Made offensive, inaccurate, prejudicial, and racially-charged comments to Plaintiff, BRITTANY MOORE's, husband/Plaintiff, AUSAR T. MOORE, and her other family members and neighbor in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures prohibiting its employees, actual or apparent agents, and/or representatives from bias-based profiling, including in searches and seizures, which SHERIFF WILLIAMS and JSO define as the detention, interdiction, or other disparate contact/treatment of any person on the basis of their race, color, ethnicity, sexual orientation, gender identification, physical handicap, economic status, age, cultural group, religion or other belief system;

k.  Failed to relay Plaintiff, BRITTANY MOORE's, injury complaints and his observation of her injuries to Co-Defendant, OFFICER HIGHSMITH, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives when completing any official report, form, or correspondence to ensure they do so thoroughly, accurately, and in a

43

timely manner;

l. Caused Plaintiff, BRITTANY MOORE, to hit the front of her head on the door frame of his police vehicle when placing her into while handcuffed in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to maintain physical control over handcuffed subjects by securely holding onto the subjects while escorting them on foot;

m. Failed to complete an RTR Report related to the physical force used when arresting Plaintiff, BRITTANY MOORE, and her subsequent complaints of injuries in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to complete an RTR Report when physical force was used on a subject and the force resulted, or was alleged to have resulted, in any injury, regardless of the severity;

n. Failed to complete an RTR Report related to his observations of Plaintiff, BRITTANY MOORE's, chipped front teeth in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to complete an RTR Report when an injury is observed on a subject following the use of any response to resistance; and/or

o. Failed to complete an RTR Report after battering Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to submit such a report within 24 hours of the incident.

157.    The misconduct described in this Count was committed with the

conscious and intentional disregard of and indifference to the rights and

safety of the Plaintiff, BRITTANY MOORE, and Defendant, OFFICER

PADGETT, knew or reasonably should have known said misconduct would likely result in injury, damage, or other harm to Plaintiff, BRITTANY MOORE, and that his misconduct created or substantially contributed to the creation of the dangerous circumstances he placed Plaintiff, BRITTANY MOORE, into, as described above.

158.     In addition, as a direct and proximate result of Defendant, OFFICER PADGETT's, misconduct described in this Count, Plaintiff, BRITTANY MOORE, was deprived of the rights, privileges, and immunities secured to her by the Fourth and Fourteenth Amendments to the U.S. Constitution and law enacted thereunder, and suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.  Plaintiff, BRITTANY MOORE, has or will become compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER

CHRIS N. PADGETT, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

**COUNT VII**
**State Law Claim – Willful and Wanton Conduct v. Officer Chris N. Padgett**

159.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 159 of this Count VII, as though fully stated herein.

160.    Defendant, OFFICER PADGETT, individually and as agent, employee, and/or servant of JSO, had a duty to refrain from willful and wanton conduct.

161.    At all times relevant, Plaintiff, BRITTANY MOORE, exercised ordinary care for her own safety.

162.    On May 13, 2020, Defendant, OFFICER PADGETT, acted with reckless disregard and/or willful and wanton conduct, and showed an utter indifference as to the constitutional rights of the Plaintiff, BRITTANY MOORE, when he negligently and unlawfully followed Plaintiff into her home without a search warrant, attempted to disrobe her, repeatedly and

severely battered her while she laid on the floor of her home, and made

offensive, inaccurate, prejudicial, and racially-charged comments to her

family members and neighbor.

163.    In addition, as a direct and proximate result of the aforementioned

acts and/or omissions of Defendant, OFFICER PADGETT, the Plaintiff,

BRITTANY MOORE, was thereby injured internally, externally, and

otherwise, both temporarily and permanently.  Plaintiff thereby became

sick, sore, lame, diseased, and disordered and so remained for a long time.

During this period, Plaintiff suffered or will suffer great pain and was

hindered and prevented from attending to her business and affairs.  Plaintiff

was and/or will be thereby compelled to pay out, expend, and/or become

liable for divers large sums of money in endeavoring to be cured of her

injuries.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C.

WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and

GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER

CHRIS N. PADGETT, in his individual and official capacity, in an amount to

exceed the jurisdictional limits of this Court, and further demands punitive

damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT VIII
### State Law Claim – Battery v. Officer Chris N. Padgett

164.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 164 of this Count VIII, as though fully stated herein.

165.    Defendant, OFFICER PADGETT, individually and/or as agent, employee, and/or servant of JSO, intentionally and/or knowingly repeatedly and severely battered Plaintiff, BRITTANY MOORE, while she laid on the floor of her home.

166.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER PADGETT, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently.  Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time.  During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become

liable for divers large sums of money in endeavoring to be cured of her injuries.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER CHRIS N. PADGETT, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT IX
## 42 U.S.C. § 1983 – Excessive Force v. Officer Tyler Landreville

167.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 167 of this Count IX, as though fully stated herein.

168.    As described in detail above, Defendant, OFFICER LANDREVILLE, while acting within the scope of his employment and under the color of law and authority as a responding officer, individually and/or jointly deprived Plaintiff, BRITTANY MOORE, of her constitutional rights.

169.    Defendant, OFFICER LANDREVILLE, while acting individually,

jointly, and under the color of law and within the scope of his employment, battered Plaintiff, BRITTANY MOORE, and pinned her down by kneeling on her neck while she laid on the floor of her home, in violation of the Fourteenth Amendment of the U.S. Constitution.

170.     Defendant, OFFICER LANDREVILLE's, actions, while acting under the color of law, amounted to unnecessary and excessive force to the person of the Plaintiff, BRITTANY MOORE, when there were no reasonable grounds to do so.

171.     As described in detail above, Plaintiff, BRITTANY MOORE's, actions did not justify the use of unnecessary and excessive force by Defendant, OFFICER LANDREVILLE.

172.     Defendant, OFFICER LANDREVILLE, acted in concert with other officers to apply excessive force upon Plaintiff, BRITTANY MOORE.

173.     The conduct described in this Count was objectively unreasonable and was undertaken intentionally and maliciously, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff, BRITTANY MOORE's, constitutionally protected rights.

174.     In addition, as a direct and proximate result of the aforementioned

acts and/or omissions of Defendant, OFFICER LANDREVILLE, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently. Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time. During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs. Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER TYLER LANDREVILLE, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT X
### 42 U.S.C. § 1983 – Unreasonable Search and Seizure v. Officer Tyler Landreville

175.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 175 of this Count X, as though fully stated herein.

176.    As described in detail above, Defendant, OFFICER LANDREVILLE, while acting within the scope of his employment and under the color of law and authority as a responding officer, individually and/or jointly deprived Plaintiff, BRITTANY MOORE, of her constitutional rights.

177.    Defendant, OFFICER LANDREVILLE, while acting individually, jointly, and under the color of law and within the scope of his employment, followed Plaintiff, BRITTANY MOORE, entered her home without a search warrant, in violation of the Fourth Amendment of the U.S. Constitution.

178.    Furthermore, Defendant, OFFICER LANDREVILLE, while acting individually, jointly, and under the color of law and within the scope of his employment, reentered Plaintiff, BRITTANY MOORE's, residence, including room(s) and closet(s), under the guise of assisting her husband/Plaintiff, AUSAR T. MOORE, in locating her wallet without a

search warrant, in violation of the Fourth Amendment of the U.S. Constitution.

179.    Defendant, OFFICER LANDREVILLE's, actions, while acting under the color of law, amounted to unreasonable search and seizure of the person and property of the Plaintiff, BRITTANY MOORE, when there were no reasonable grounds to do so.

180.    As described in detail above, Plaintiff, BRITTANY MOORE's, actions did not justify the unreasonable search and seizure by Defendant, OFFICER LANDREVILLE.

181.    Defendant, OFFICER LANDREVILLE, acted in concert with other officers to effectuate an unreasonable search and seizure upon Plaintiff, BRITTANY MOORE, and her property.

182.    The conduct described in this Count was objectively unreasonable and was undertaken intentionally and maliciously, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff, BRITTANY MOORE's, constitutionally protected rights.

183.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER LANDREVILLE, the Plaintiff,

BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently. Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time. During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs. Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER TYLER LANDREVILLE, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

### COUNT XI
**42 U.S.C. § 1983 – State-Created Danger Violation of 14th Amendment Substantive Due Process v. Officer Tyler Landreville**

184.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1

through 122 of this Complaint, as and for paragraph 184 of this Count XI, as though fully stated herein.

185.    In the manner more fully described above, before and during the commission of the constitutional violations described herein, Defendant, OFFICER LANDREVILLE, used his authority as an Officer and an employee, agent, and/or representative of Defendant, SHERIFF WILLIAMS, to create an environment that endangered both Plaintiff, BRITTANY MOORE's, physical safety and mental/emotional health, in one or more of the following ways:

a.  Violated SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures concerning Arrests, Code of Conduct, and Response to Resistance;

b.  Failed to secure an arrest warrant prior to entering Plaintiff, BRITTANY MOORE's, residence in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to have probable cause or obtain an arrest warrant prior to arresting an individual;

c.  Failed to secure an arrest warrant prior to entering Plaintiff, BRITTANY MOORE's, residence and violently placing her into custody in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to obtain an arrest warrant for the arrest of a suspect in that suspect's place of residence;

d.  Assaulted and battered Plaintiff, BRITTANY MOORE, in violation of

SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to use only the minimum force necessary to effect the arrest and to not inflict any mental or physical harm on any individual;

e.  Made offensive, inaccurate, and prejudicial comments to Plaintiff, BRITTANY MOORE's, family member in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to strive to treat victims, witnesses, suspects, arrested persons, and all other contact with appropriate respect and to suppress personal prejudices or attitudes, which may influence impartiality;

f.  Made offensive, inaccurate, and prejudicial comments to Plaintiff, BRITTANY MOORE's, family member in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to refrain from unbecoming conduct, including, but not limited to, speaking disparagingly about, defaming, or demeaning another member, or the gender, ethnic origin, religion, race, disability, or sexual orientation of any person or group;

g.  Made offensive, inaccurate, and prejudicial comments to Plaintiff, BRITTANY MOORE's, family member in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to refrain from unbecoming conduct, including, but not limited to, engaging in controversies and displaying partiality;

h.  Stood by, watched, and even assisted his fellow officer in repeatedly and severely battering Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to intervene when observing another officer using force that is beyond that which is objectively reasonable to prevent the further use of such unnecessary force, and to promptly report said unnecessary

force to a supervisor or the Internal Affairs Unit;

i.   Failed to complete an RTR Report after battering Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to complete such a report when physical force was used on a subject and the force resulted, or was alleged to have resulted, in any injury, regardless of the severity;

j.   Failed to complete an RTR Report related to his observations of Plaintiff, BRITTANY MOORE's, chipped front teeth in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to complete an RTR Report when an injury is observed on a subject following the use of any response to resistance;

k.   Failed to complete an RTR Report after battering Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to submit such a report within 24 hours of the incident; and/or

l.   Conducted a search of Plaintiff, BRITTANY MOORE's, abode without a search warrant when he reentered her residence, including room(s) and closet(s), under the guise of assisting her husband/Plaintiff, AUSAR T. MOORE, in locating her wallet, in violation of the Fourth Amendment of the U.S. Constitution.

186.   The misconduct described in this Count was committed with the conscious and intentional disregard of and indifference to the rights and safety of the Plaintiff, BRITTANY MOORE, and Defendant, OFFICER LANDREVILLE, knew or reasonably should have known said misconduct

57

would likely result in injury, damage, or other harm to Plaintiff, BRITTANY

MOORE, and that his misconduct created or substantially contributed to the

creation of the dangerous circumstances he placed Plaintiff, BRITTANY

MOORE, into, as described above.

187.    In addition, as a direct and proximate result of Defendant, OFFICER

LANDREVILLE's, misconduct described in this Count, Plaintiff,

BRITTANY MOORE, was deprived of the rights, privileges, and immunities

secured to her by the Fourth and Fourteenth Amendments to the U.S.

Constitution and law enacted thereunder, and suffered loss of liberty, great

mental anguish, humiliation, degradation, emotional pain and suffering,

and other grievous and continuing injuries and damages set forth above.

Plaintiff, BRITTANY MOORE, has or will become compelled to pay out,

expend, and/or become liable for divers large sums of money in

endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C.

WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and

GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER

TYLER LANDREVILLE, in his individual and official capacity, in an amount to

exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XII
### 42 U.S.C. § 1983 – Failure to Intervene v. Officer Tyler Landreville

188.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 188 of this Count XII, as though fully stated herein.

189.    On or about May 13, 2020, during the aforementioned incident and at all relevant times, Defendant, OFFICER LANDREVILLE, observed Defendant, OFFICER PADGETT, follow Plaintiff, BRITTANY MOORE, into her home without a warrant, attempt to disrobe her, and repeatedly and severely batter her.

190.    Despite knowing that Defendant, OFFICER PADGETT, was violating Plaintiff, BRITTANY MOORE's, rights and immunities secured to her by the U.S. Constitution and JSO's own rules, policies, and/or procedures, Defendant, OFFICER LANDREVILLE, proceeded to commit the same violations.

191.    He too entered Plaintiff, BRITTANY MOORE's, residence without a

warrant and assisted Defendant, OFFICER PADGETT, in battering her.

192.    In addition, Defendant, OFFICER LANDREVILLE, stood by without intervening to prevent the violation of Plaintiff, BRITTANY MOORE's, constitutional rights, despite having ample opportunity to do so.

193.    The misconduct described in this Count was committed with the conscious and intentional disregard of and indifference to the rights and safety of the Plaintiff, BRITTANY MOORE, and Defendant, OFFICER LANDREVILLE, knew or reasonably should have known said misconduct would likely result in injury, damage, or other harm to Plaintiff, BRITTANY MOORE.

194.    In addition, as a direct and proximate result of Defendant, OFFICER LANDREVILLE's, misconduct described in this Count, Plaintiff, BRITTANY MOORE, was deprived of the rights, privileges, and immunities secured to her by the Fourth and Fourteenth Amendments to the U.S. Constitution and law enacted thereunder, and suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages set forth above. Plaintiff, BRITTANY MOORE, has or will become compelled to pay out,

expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER TYLER LANDREVILLE, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

<u>**COUNT XIII**</u>
**State Law Claim – Willful and Wanton Conduct v. Officer Tyler Landreville**

195.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 195 of this Count XIII, as though fully stated herein.

196.    Defendant, OFFICER LANDREVILLE, individually and as agent, employee, and/or servant of JSO, had a duty to refrain from willful and wanton conduct.

197.    At all times relevant, Plaintiff, BRITTANY MOORE, exercised ordinary care for her own safety.

198.    On May 13, 2020, Defendant, OFFICER LANDREVILLE, acted with reckless disregard and/or willful and wanton conduct, and showed an utter indifference as to the constitutional rights of the Plaintiff, BRITTANY MOORE, when he negligently entered her home without a search warrant, failed to intervene when a fellow officer violated her rights and instead assisted in battering her while she laid on the floor of her home, made offensive, inaccurate, and prejudicial comments to her family member, and reentered her residence without a search warrant under the guise of assisting her husband/Plaintiff, AUSAR T. MOORE, in locating her wallet.

199.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER LANDREVILLE, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently.  Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time. During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her

injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER TYLER LANDREVILLE, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

**COUNT XIV**
**State Law Claim – Battery v. Officer Tyler Landreville**

200.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 200 of this Count XIV, as though fully stated herein.

201.    Defendant, OFFICER LANDREVILLE, individually and/or as agent, employee, and/or servant of JSO, intentionally and/or knowingly battered Plaintiff, BRITTANY MOORE, while she laid on the floor of her home.

202.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, OFFICER LANDREVILLE, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and

otherwise, both temporarily and permanently.  Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time. During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business and affairs.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER TYLER LANDREVILLE, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XV
### 42 U.S.C. § 1983 – Failure to Intervene v. Officer Martin D. Highsmith

203.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 203 of this Count XV, as though fully stated herein.

204.    On or about May 13, 2020, during the aforementioned incident and at all relevant times, Defendant, OFFICER HIGHSMITH, observed and/or was aware that Defendants, OFFICER PADGETT and OFFICER LANDREVILLE, followed Plaintiff, BRITTANY MOORE, into her home without a warrant, attempted to disrobe her, and repeatedly and severely battered her.

205.    Furthermore, on or about May 13, 2020, during the aforementioned incident and at all relevant times, Defendant, OFFICER HIGHSMITH, observed and/or was aware that Defendant, OFFICER LANDREVILLE, reentered Plaintiff, BRITTANY MOORE's, residence without a search warrant under the guise of assisting her husband/Plaintiff, AUSAR T. MOORE, in locating her wallet, in violation of the Fourth Amendment of the U.S. Constitution.

206.    Defendant, OFFICER HIGHSMITH, even advised Plaintiff, BRITTANY MOORE, while transporting her for booking that he and his fellow officers were unable to enter her home without a warrant.

207.    Despite knowing that Defendants, OFFICER PADGETT and OFFICER LANDREVILLE, had violated Plaintiff, BRITTANY MOORE's,

rights and immunities secured to her by the U.S. Constitution and JSO's own rules, policies, and/or procedures, Defendant, OFFICER HIGHSMITH, stood by without intervening to prevent the violation of Plaintiff, BRITTANY MOORE's, constitutional rights, despite having ample opportunity to do so.

208.    The misconduct described in this Count was committed with the conscious and intentional disregard of and indifference to the rights and safety of the Plaintiff, BRITTANY MOORE, and Defendant, OFFICER HIGHSMITH, knew or reasonably should have known said misconduct would likely result in injury, damage, or other harm to Plaintiff, BRITTANY MOORE.

209.    In addition, as a direct and proximate result of Defendant, OFFICER HIGHSMITH's, misconduct described in this Count, Plaintiff, BRITTANY MOORE, was deprived of the rights, privileges, and immunities secured to her by the Fourth and Fourteenth Amendments to the U.S. Constitution and law enacted thereunder, and suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.  Plaintiff, BRITTANY

MOORE, has or will become compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER MARTIN D. HIGHSMITH, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XVI
### 42 U.S.C. § 1983 – State-Created Danger Violation of 14th Amendment Substantive Due Process v. Officer Martin D. Highsmith

210.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 210 of this Count XVI, as though fully stated herein.

211.    In the manner more fully described above, before and during the commission of the constitutional violations described herein, Defendant, OFFICER HIGHSMITH, used his authority as an Officer and an employee,

agent, and/or representative of Defendant, SHERIFF WILLIAMS, to create

an environment that endangered both Plaintiff, BRITTANY MOORE's,

physical safety and mental/emotional health, in one or more of the following

ways:

a. Violated SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures concerning Arrests;

b. Failed to secure an arrest warrant prior to arresting Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to have probable cause or obtain an arrest warrant prior to arresting an individual;

c. Failed to secure an arrest warrant prior to arresting Plaintiff, BRITTANY MOORE, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to obtain an arrest warrant for the arrest of a suspect in that suspect's place of residence; and/or

d. Allowed fellow officers to transport Plaintiff, BRITTANY MOORE, to a public parking lot after sundown then failed to search her after placing her in his own vehicle in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to search arrestees upon the transfer of custody from one officer to another.

212.    The misconduct described in this Count was committed with the

conscious and intentional disregard of and indifference to the rights and

safety of the Plaintiff, BRITTANY MOORE, and Defendant, OFFICER

HIGHSMITH, knew or reasonably should have known said misconduct would likely result in injury, damage, or other harm to Plaintiff, BRITTANY MOORE, and that his misconduct created or substantially contributed to the creation of the dangerous circumstances he placed Plaintiff, BRITTANY MOORE, into, as described above.

213.    In addition, as a direct and proximate result of Defendant, OFFICER HIGHSMITH's, misconduct described in this Count, Plaintiff, BRITTANY MOORE, was deprived of the rights, privileges, and immunities secured to her by the Fourth and Fourteenth Amendments to the U.S. Constitution and law enacted thereunder, and suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.  Plaintiff, BRITTANY MOORE, has or will become compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER

MARTIN D. HIGHSMITH, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

**COUNT XVII**
**42 U.S.C. § 1983 – State-Created Danger Violation of 14th Amendment**
**Substantive Due Process v. Supervisor David P. Jadlocki**

214.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122of this Complaint, as and for paragraph 214 of this Count XVII, as though fully stated herein.

215.    In the manner more fully described above, before and during the commission of the constitutional violations described herein, Defendant, SUPERVISOR JADLOCKI, used his authority as an Officer and an employee, agent, and/or representative of Defendant, SHERIFF WILLIAMS, to create an environment that endangered both Plaintiff, BRITTANY MOORE's, physical safety and mental/emotional health, in one or more of the following ways:

a. Violated SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures concerning Code of Conduct and Direction and Supervision;

b. Made offensive, inappropriate, vulgar, inaccurate, prejudicial, sexist,

and racist comments about Plaintiff, BRITTANY MOORE, to Co-Defendant, OFFICER CARMONA-FOSECA, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to maintain command of temper, exercise patience and discretion, as well as refrain from coarse, profane, or insolent language;

c. Made offensive, inappropriate, vulgar, inaccurate, prejudicial, sexist, and racist comments about Plaintiff, BRITTANY MOORE, to Co-Defendant, OFFICER CARMONA-FOSECA, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to strive to treat victims, witnesses, suspects, arrested persons, and all other contact with appropriate respect and to suppress personal prejudices or attitudes, which may influence impartiality;

d. Made offensive, inappropriate, vulgar, inaccurate, prejudicial, sexist, and racist comments about Plaintiff, BRITTANY MOORE, to Co-Defendant, OFFICER CARMONA-FOSECA, in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to refrain from unbecoming conduct, including, but not limited to, speaking disparagingly about, defaming, or demeaning another member, or the gender, ethnic origin, religion, race, disability, or sexual orientation of any person or group;

e. Made offensive, inappropriate, vulgar, inaccurate, prejudicial, sexist, and racist comments about Plaintiff, BRITTANY MOORE, to Co-Defendant, OFFICER CARMONA-FOSECA, and to her family member in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures prohibiting its employees, actual or apparent agents, and/or representatives from bias-based profiling, including in searches and seizures, which SHERIFF WILLIAMS and JSO define as the detention, interdiction, or other disparate contact/treatment of any person on the basis of their race, color, ethnicity, sexual orientation, gender identification, physical handicap, economic status, age, cultural group,

religion or other belief system;

f.  Made offensive, inappropriate, inaccurate, prejudicial, and racist comments to Plaintiff, BRITTANY MOORE's, family member in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures requiring its employees, actual or apparent agents, and/or representatives to refrain from unbecoming conduct, including, but not limited to, engaging in controversies and displaying partiality;

g.  Failed to obtain all the facts relating to this incident and Plaintiff, BRITTANY MOORE's, injuries and ensure his subordinate officers completed RTR Reports in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures holding its supervisors responsible for the supervision, performance, and conduct of each subordinate, ensuring written directives are followed at all times; and/or

h.  Failed to obtain all the facts relating to this incident and Plaintiff, BRITTANY MOORE's, injuries and ensure his subordinate officers completed RTR Reports in violation of SHERIFF WILLIAMS and JSO's rules, policies, and/or procedures holding its supervisors responsible for maintaining full responsibility for the proper execution of orders given to subordinates, recognizing that the delivery of an order to a subordinate does not absolve the superior of the responsibility to ensure it is completed.

216.    The misconduct described in this Count was committed with the conscious and intentional disregard of and indifference to the rights and safety of the Plaintiff, BRITTANY MOORE, and Defendant, SUPERVISOR JADLOCKI, knew or reasonably should have known said misconduct would likely result in injury, damage, or other harm to Plaintiff, BRITTANY MOORE, and that his misconduct created or substantially contributed to the

creation of the dangerous circumstances he placed Plaintiff, BRITTANY

MOORE, into, as described above.

217.    In addition, as a direct and proximate result of Defendant,

SUPERVISOR JADLOCKI's, misconduct described in this Count, Plaintiff,

BRITTANY MOORE, was deprived of the rights, privileges, and immunities

secured to her by the Fourteenth Amendment to the U.S. Constitution and

law enacted thereunder, and suffered loss of liberty, great mental anguish,

humiliation, degradation, emotional pain and suffering, and other grievous

and continuing injuries and damages set forth above.  Plaintiff, BRITTANY

MOORE, has or will become compelled to pay out, expend, and/or become

liable for divers large sums of money in endeavoring to be cured of her

injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C.

WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and

GALNOR SHUMARD, P.A., prays for judgment against Defendant, SUPERVISOR

DAVID P. JADLOCKI, in his individual and official capacity, in an amount to

exceed the jurisdictional limits of this Court, and further demands punitive

damages, costs, and attorneys fees, and for any additional relief this Court deems

equitable and just.

## COUNT XVIII
### 42 U.S.C. § 1983 – Municipal Liability v. Former Sheriff Mike Williams

218.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1

through 122 of this Complaint, as and for paragraph 218 of this Count XVIII,

as though fully stated herein.

219.    Defendant, SHERIFF WILLIAMS, by and through Defendants,

OFFICER CARMONA-FONSECA, OFFICER PADGETT, OFFICER

LANDREVILLE, OFFICER HIGHSMITH, and SUPERVISOR JADLOCKI, in

their official capacity as agents and/or employees of JSO acting within their

authority and under the color of state law, instituted and followed practices,

customs, and policies which directly resulted in the unlawful search and

seizure and use of force against Plaintiff, BRITTANY MOORE, which were

the moving force causing her injuries and is actionable under 42 U.S.C. §

1983, as a violation of the Fourth and Fourteenth Amendments of the U.S.

Constitution.

220.    Defendant, SHERIFF WILLIAMS, has exhibited a widespread

custom, practice, and/or policy of violating these rights as exhibited by the

numerous arrests and uses of force carried out that have been detailed

above.

221.    By encouraging and failing to discipline his officers for these constitutional violations, Defendant, SHERIFF WILLIAMS, has ratified his officers' decisions and reasons for those decisions, thus constituting a practice, custom, and/or policy.

222.    Alternatively, the officers acting on the scene were the final policy makers for Defendant, SHERIFF WILLIAMS, as their decisions were not immediately nor effectively reviewable.

223.    In addition, as a direct and proximate result of the aforementioned acts and/or omissions of Defendant, SHERIFF WILLIAMS, individually and/or by and through Defendants, OFFICER CARMONA-FONSECA, OFFICER PADGETT, OFFICER LANDREVILLE, OFFICER HIGHSMITH, and SUPERVISOR JADLOCKI, in their official capacity as agents and/or employees of JSO, the Plaintiff, BRITTANY MOORE, was thereby injured internally, externally, and otherwise, both temporarily and permanently. Plaintiff thereby became sick, sore, lame, diseased, and disordered and so remained for a long time.  During this period, Plaintiff suffered or will suffer great pain and was hindered and prevented from attending to her business

and affairs.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XIX
### 42 U.S.C. § 1983 – *Monell* Claim v. Former Sheriff Mike Williams

224.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1 through 122 of this Complaint, as and for paragraph 224 of this Count XIX, as though fully stated herein.

225.    At all times relevant to the complained of events described herein and for a period of time prior, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or

representatives, had notice of a widespread practice, policy, and/or custom whereby officers routinely performed unlawful searches and seizures and battered individuals.

226.    Specifically, at all relevant times and for a period of time prior thereto, there existed a widespread practice among members of JSO under which criminal suspects were subjected to unlawful searches and seizures and battery by officers by various means, including, but not limited to, the following:

a.  People of color being subjected to unlawful arrest based off fabricated, inaccurate, and/or insufficient evidence;

b.  People of color being subjected to excessive force;

c.  People of color being subjected to unlawful searches and seizures absent a warrant; and

d.  Supervisors with knowledge of the unlawful actions of their subordinates did not supervisor nor discipline their agents and/or employees so that unlawful arrests, excessive force, and searches and seizures continued unchecked.

227.    The aforementioned practices were widespread and allowed to flourish due to the acts and omissions of Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, which directly encouraged and was the

moving force behind the very type of misconduct at issue through Defendant, SHERIFF WILLIAMS, failing to adequately train, supervise, and/or control his agents and employees on proper arrest, use of force, and search and seizure techniques and procedures, and by failing to adequately reprimand and discipline prior instances of similar misconduct, thus directly encouraging future abuses similar to those suffered by Plaintiff, BRITTANY MOORE.

228.    The above widespread practices are so well settled as to constitute *de facto* policies and procedures of Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, and existed and thrived because policymakers with authority exhibited a deliberate indifference to the problem, thereby ratifying it.

229.    In addition, the described misconduct in this Count was undertaken deliberately by the agents and/or employees of Defendant, SHERIFF WILLIAMS, including, but not limited to, Defendants, OFFICER CARMONA-FONSECA, OFFICER PADGETT, OFFICER LANDREVILLE, OFFICER HIGHSMITH, and SUPERVISOR JADLOCKI, in an attempt to

violate Plaintiff, BRITTANY MOORE's, constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, as detailed above in the preceding Counts.  Said conduct was done with the knowledge or approval of persons with the final policymaking authority or were actually committed by persons with the aforementioned authority.

230.    The policies, practices, and customs set forth above have resulted in numerous highly publicized unlawful arrests, excessive force incidents, and unlawful searches and seizures, including those at issue in this Complaint, in which individuals were charged with and detained for crimes after being subjected to excessive use of force and unlawful searches and seizures.

231.    Plaintiff, BRITTANY MOORE's, injuries were caused by the agents and/or employees of Defendant, SHERIFF WILLIAMS, including, but not limited to, Defendants, OFFICER CARMONA-FONSECA, OFFICER PADGETT, OFFICER LANDREVILLE, OFFICER HIGHSMITH, and SUPERVISOR JADLOCKI, whose actions resulted from the policies, practices, procedures, and customs set forth above in engaging in the misconduct described in this Count.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C.

WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and

GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER

SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville

Sheriff's Office and the Consolidated City of Jacksonville, Florida, in an amount to

exceed the jurisdictional limits of this Court, and further demands punitive

damages, costs, and attorneys fees, and for any additional relief this Court deems

equitable and just.

**COUNT XX**
**State Law Claim – Willful and Wanton Conduct v. Former Sheriff**
**Mike Williams**

232.    Plaintiff, BRITTANY MOORE, adopts and realleges paragraphs 1

through 122 of this Complaint, as and for paragraph 232 of this Count XX,

as though fully stated herein.

233.    On or about May 13, 2020, and at all relevant times, Defendant,

SHERIFF WILLIAMS, had in effect rules, policies, and/or procedures

requiring its officers, including Defendants, OFFICER CARMONA-

FONSECA, OFFICER PADGETT, OFFICER LANDREVILLE, and OFFICER

HIGHSMITH, to (1) activate their BWC upon arriving at the scene of police

activity and make every reasonable attempt to activate their BWC prior to

80

engaging in police activity; (2) have probable cause or obtain an arrest warrant prior to arresting an individual, particularly when arresting them in their place of residence; (3) use only the minimum force necessary to effect arrest and to not inflict any mental or physical harm on any individual; (4) conform to the Code of Conduct, treat individuals with respect, refrain from unbecoming conduct, including speaking disparagingly about individuals based off their gender, race, etc., and refrain from coarse, profane, or insolent language; and (5) complete RTR Reports within 24 hours when physical force was used to arrest an individual, including when said individual complains of an injury.

234.    In addition, on or about May 13, 2020, and at all relevant times, Defendant, SHERIFF WILLIAMS, had in effect rules, policies, and/or procedures holding its police supervisors, including Defendant, SUPERVISOR JADLOCKI, responsible for their subordinate officers.

235.    On or about May 13, 2020, and at all relevant times, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, including, but not limited to, Defendants, OFFICER CARMONA-FONSECA, OFFICER PADGETT,

OFFICER LANDREVILLE, OFFICER HIGHSMITH, and SUPERVISOR JADLOCKI, was under a duty to act as reasonably under the circumstances so as not to harm Plaintiff, BRITTANY MOORE, or other persons.

236.    On or about May 13, 2020, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, including, but not limited to, Defendant, OFFICER CARMONA-FONSECA, knowingly and/or intentionally breached the aforesaid duty of care by failing to activate his BWC upon arriving at the scene of police activity and make every reasonable attempt to activate his BWC prior to engaging in police activity with Plaintiff, BRITTANY MOORE, and by otherwise failing to properly adhere to the policies and/or procedures referenced in ¶ 235 *supra*.

237.    On or about May 13, 2020, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, including, but not limited to, Defendants, OFFICER PADGETT, OFFICER LANDREVILLE, and OFFICER HIGHSMITH, knowingly and/or intentionally breached the aforesaid duty of care by failing to have probable cause or obtain an arrest warrant prior to

arresting Plaintiff, BRITTANY MOORE, particularly when arresting her in her place of residence, and by otherwise failing to properly adhere to the policies and/or procedures referenced in ¶ 235 *supra*.

238.    On or about May 13, 2020, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, including, but not limited to, Defendants, OFFICER PADGETT and OFFICER LANDREVILLE, knowingly and/or intentionally breached the aforesaid duty of care by failing to use only the minimum force necessary to effect the arrest of Plaintiff, BRITTANY MOORE, and to not inflict any mental or physical harm on any individual, including the Plaintiff, BRITTANY MOORE, and by otherwise failing to properly adhere to the policies and/or procedures referenced in ¶ 235 *supra*.

239.    On or about May 13, 2020, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, including, but not limited to, Defendants, OFFICER PADGETT, OFFICER LANDREVILLE, and SUPERVISOR JADLOCKI, knowingly and/or intentionally breached the aforesaid duty of care by failing to conform to the Code of Conduct, treat individuals with

respect, refrain from unbecoming conduct, including speaking disparagingly about individuals based off their gender, race, etc., and refrain from coarse, profane, or insolent language, including during their interactions with Plaintiff, BRITTANY MOORE, her husband/Plaintiff, AUSAR T. MOORE, her family members, and neighbor, and by otherwise failing to properly adhere to the policies and/or procedures referenced in ¶ 235 *supra*.

240.    On or about May 13, 2020, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, including, but not limited to, Defendants, OFFICER PADGETT and OFFICER LANDREVILLE, knowingly and/or intentionally breached the aforesaid duty of care by failing to complete RTR Reports within 24 hours when physical force was used to arrest Plaintiff, BRITTANY MOORE, including when she complained of injuries, and by otherwise failing to properly adhere to the policies and/or procedures referenced in ¶ 235 *supra*.

241.    On or about May 13, 2020, Defendant, SHERIFF WILLIAMS, individually and/or by and through his employees, actual or apparent

agents, and/or representatives, including, but not limited to, Defendant, SUPERVISOR JADLOCKI, knowingly and/or intentionally breached the aforesaid duty of care by failing to ensure his subordinate officers were complying with written directives and orders in relation to their interactions with and arrest of Plaintiff, BRITTANY MOORE, and by otherwise failing to properly adhere to the policies and/or procedures referenced in ¶ 236 *supra*.

242.    At all relevant times, Plaintiff, BRITTANY MOORE, was in the exercise of ordinary care for her own safety.

243.    As a direct and proximate result of the misconduct of Defendant SHERIFF WATERS, individually and/or by and through his employees, actual or apparent agents, and/or representatives, Plaintiff, BRITTANY MOORE, suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.  Plaintiff was and/or will be thereby compelled to pay out, expend, and/or become liable for divers large sums of money in endeavoring to be cured of her injuries and the false allegations.

WHEREFORE, Plaintiff, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, by and through her attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XXI
### State Law Claim – Loss of Consortium v. Former Officer Alejandro Carmona-Fonseca

244.    Plaintiff, AUSAR T. MOORE, hereby repeats and realleges each and every paragraph of Counts I, II, and III of this Complaint and all of its allegations in their entirety as and for paragraph 244 of this Count XXI, as though fully stated herein.

245.    Plaintiff, AUSAR T. MOORE, is the husband of Plaintiff, BRITTANY MOORE, and as a result of the injuries to Plaintiff, BRITTANY MOORE, the Plaintiff, AUSAR T. MOORE, her spouse, was deprived and will in the future be deprived of Plaintiff, BRITTANY MOORE's, services, society,

affection, and consortium.

WHEREFORE, Plaintiff, AUSAR T. MOORE, by and through his attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER OFFICER ALEJANDRO CARMONA-FONSECA, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XXII
### State Law Claim – Loss of Consortium v. Officer Chris N. Padgett

246.    Plaintiff, AUSAR T. MOORE, hereby repeats and realleges each and every paragraph of Counts IV, V, VI, VII, and VIII of this Complaint and all of its allegations in their entirety as and for paragraph 246 of this Count XXII, as though fully stated herein.

247.    Plaintiff, AUSAR T. MOORE, is the husband of Plaintiff, BRITTANY MOORE, and as a result of the injuries to Plaintiff, BRITTANY MOORE, the Plaintiff, AUSAR T. MOORE, her spouse, was deprived and will in the future be deprived of Plaintiff, BRITTANY MOORE's, services, society, affection, and consortium.

WHEREFORE, Plaintiff, AUSAR T. MOORE, by and through his attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER CHRIS N. PADGETT, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XXIII
**State Law Claim – Loss of Consortium v. Officer Tyler Landreville**

248.    Plaintiff, AUSAR T. MOORE, hereby repeats and realleges each and every paragraph of Counts IX, X, XI, XII, XIII, and XIV of this Complaint and all of its allegations in their entirety as and for paragraph 248 of this Count XXIII, as though fully stated herein.

249.    Plaintiff, AUSAR T. MOORE, is the husband of Plaintiff, BRITTANY MOORE, and as a result of the injuries to Plaintiff, BRITTANY MOORE, the Plaintiff, AUSAR T. MOORE, her spouse, was deprived and will in the future be deprived of Plaintiff, BRITTANY MOORE's, services, society, affection, and consortium.

WHEREFORE, Plaintiff, AUSAR T. MOORE, by and through his attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for

judgment against Defendant, OFFICER TYLER LANDREVILLE, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

<b><u>COUNT XXIV</u></b><br>
<b>State Law Claim – Loss of Consortium v. Officer Martin D. Highsmith</b>

250.    Plaintiff, AUSAR T. MOORE, hereby repeats and realleges each and every paragraph of Counts XV and XVI of this Complaint and all of its allegations in their entirety as and for paragraph 250 of this Count XXIV, as though fully stated herein.

251.    Plaintiff, AUSAR T. MOORE, is the husband of Plaintiff, BRITTANY MOORE, and as a result of the injuries to Plaintiff, BRITTANY MOORE, the Plaintiff, AUSAR T. MOORE, her spouse, was deprived and will in the future be deprived of Plaintiff, BRITTANY MOORE's, services, society, affection, and consortium.

WHEREFORE, Plaintiff, AUSAR T. MOORE, by and through his attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, OFFICER MARTIN D. HIGHSMITH, in his individual and official capacity, in an amount to exceed the jurisdictional limits of

this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## <u>COUNT XXV</u>
**State Law Claim – Loss of Consortium v. Supervisor David P. Jadlocki**

252.    Plaintiff, AUSAR T. MOORE, hereby repeats and realleges each and every paragraph of Count XVII of this Complaint and all of its allegations in their entirety as and for paragraph 252 of this Count XXV, as though fully stated herein.

253.    Plaintiff, AUSAR T. MOORE, is the husband of Plaintiff, BRITTANY MOORE, and as a result of the injuries to Plaintiff, BRITTANY MOORE, the Plaintiff, AUSAR T. MOORE, her spouse, was deprived and will in the future be deprived of Plaintiff, BRITTANY MOORE's, services, society, affection, and consortium.

WHEREFORE, Plaintiff, AUSAR T. MOORE, by and through his attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, SUPERVISOR DAVID P. JADLOCKI, in his individual and official capacity, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XXVI
### State Law Claim – Loss of Consortium v. Former Sheriff Mike Williams

254.     Plaintiff, AUSAR T. MOORE, hereby repeats and realleges each and every paragraph of Counts XVIII, XIX, and XX of this Complaint and all of its allegations in their entirety as and for paragraph 254 of this Count XXVI, as though fully stated herein.

255.     Plaintiff, AUSAR T. MOORE, is the husband of Plaintiff, BRITTANY MOORE, and as a result of the injuries to Plaintiff, BRITTANY MOORE, the Plaintiff, AUSAR T. MOORE, her spouse, was deprived and will in the future be deprived of Plaintiff, BRITTANY MOORE's, services, society, affection, and consortium.

WHEREFORE, Plaintiff, AUSAR T. MOORE, by and through his attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., prays for judgment against Defendant, FORMER SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, in an amount to exceed the jurisdictional limits of this Court, and further demands punitive damages, costs, and attorneys fees, and for any additional relief this Court deems equitable and just.

## COUNT XXVII
### F.S. § 768.28 – Indemnification Claim v. Former Sheriff Mike Williams

256.     Plaintiffs, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, and AUSAR T. MOORE, adopt and reallege paragraphs 1 through 254 of this Complaint, as and for paragraph 256 of this Count XXVII, as though fully stated herein.

257.     Plaintiffs, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, and AUSAR T. MOORE, have satisfied all conditions precedent to bringing this action as required pursuant to F.S. § 768.28 and §112.201-112.205 of the Jacksonville Ordinance Code.

258.     In the event that any individual Defendant is found liable for their actions performed in the course of their employment, Defendant, SHERIFF WILLIAMS, must indemnify such employee for this verdict and hereby waives sovereign immunity for liability for torts pursuant to F.S. § 768.28.

WHEREFORE, Plaintiffs, BRITTANY C. MOORE, née BRITTANY C. WILLIAMS, and AUSAR T. MOORE, by and through their attorneys, O'CONNOR LAW FIRM, LTD. and GALNOR SHUMARD, P.A., individually demand that Defendant, SHERIFF MIKE WILLIAMS, in his official capacity as Sheriff of the

Jacksonville Sheriff's Office and the Consolidated City of Jacksonville, Florida, pay

for any compensatory judgment against individual Defendants who acted in the

course of their employment.

## JURY DEMAND

Plaintiffs demand trial by jury.

Respectfully Submitted,

O'CONNOR LAW FIRM, LTD.                GALNOR SHUMARD, P.A.

/s/ *Kevin W. O'Connor*                /s/ *Darcy D. Galnor*
Kevin W. O'Connor (IL ARDC #: 6216627)   Darcy D. Galnor (FL Bar #: 908681)
O'CONNOR LAW FIRM, LTD.                GALNOR SHUMARD, P.A.
100 South Wacker Drive, Suite 350       225 Water Street, Suite 1280
Chicago, Illinois 60606                 Jacksonville, Florida 32202
P: (312) 906-7609 | F: (312) 263-1913   P: (904) 337-0900 | F: (904) 602-8190
koconnor@koconnorlaw.com                darcy@galnorshumard.com
firm@koconnorlaw.com                    gary@galnorshumard.com